Michael Walsh, Respondent, v. Philip Sichler, Appellant.

### Kansas City Court of Appeals, January 25, 1886.

1. Trover—What Necessary to Maintain—In What it Consists —Case Adjudged.—To maintain the action of *trover*, there must be either a taking from the owner, or an unwarranted *assumption* of control and ownership over the thing ; or an illegal use or abuse of it ; or proof of demand and refusal to surrender. It consists in a tortious act by the defendant, by which he deprives the plaintiff of his goods, either wholly, or but for a time. In respect of a *fixture,* the mere fact of a landlord making a deed to the realty, during the tenancy is not of itself, sufficient to support the action of *trover*.

2. Fixtures—Rule of Law Concerning.—It is optional with the tenant to regard fixtures as removable. It is at his election, and he must exercise this right of election and removal during the existence of the tenancy ; and he cannot do so after the termination of his lease, or his abandonment of the premises, or, in certain qualified instances, unless within a reasonable time thereafter. The rule applies not only to tenancies which terminate by lapse of time, but also to cases where the tenancy is determined by the tenant's own act, or abandonment.

Appeal from Moberly Common Pleas Court, Hon. G. Burckhartt, Judge.

*Reversed.*

Statement of case by the court.

This is an action of conversion. The petition is as follows :

"Plaintiff for his cause of action against defendant complains and alleges : That on the —— day of ——,

1883, he rented of defendant a certain building, situated on lots number twenty-three and twenty-four, in block number thirteen, in the original town of Moberly, Missouri, and occupied the same as a cigar store. That afterwards, to-wit: On the —— day of ——, 1883, he caused to be placed in the said building, at his own expense, shelving and counters, and other material with the understanding that said shelving and counters, etc., were to remain the property of this plaintiff, and that he could remove the same when he ceased to occupy said building as aforesaid, and the said property was put in said building for the purpose of carrying on plaintiff's business.

"That afterward, viz.: on the sixteenth day of August, 1883, plaintiff sold to W. J. Hollis and J. L. Vroom said parts of lots numbers twenty-three and twenty-four, in block number thirteen, together with all the rights, privileges, immunities, and appurtenances thereto belonging, or in any way appertaining, includingt he building aforesaid, and conveyed the same by his general warranty deed of that 'date, thereby wrongfully converting to his own use and benefit, plaintiff's said property, and thereby damaging plaintiff in the sum of one hundred dollars.

" Wherefore, plain'iff asks judgment against defendant for the sum of one hundred dollars and for costs."

The answer tendered the general issue. The trial was had before the court without the intervention of a jury.

The facts, as disclosed at the trial, are substantially as follows: The defendant owned the lots in question, on which there was a small house. In the spring of 1883 the defendant rented this building to one John Straub for one year. Straub entered, and during his tenancy he placed in the building, for purposes of his trade, a counter, which was nailed to the floor, through the feet. After he held for a while, he let the plaintiff into the building as tenant under him, and sold this counter to plaintiff

for the sum of fifty dollars. The plaintiff while so in possession erected some shelving and put up a partition of plank in the building, which building he used as a cigar store. The plaintiff had no dealing with defendant, but paid his rent to Straub. Straub paid rent to defendant as the tenant during all the time plaintiff held the premises. While plaintiff so occupied the building the defendant, by an ordinary warranty deed, conveyed the lots, with the appurtenances, to Hollis and Vroom. Some time after this, Hollis and Vroom learning that plaintiff was about to vacate the building and intended to remove said fixtures, informed him that they had bought the premises, and claimed that the fixtures passed with the deed, and forbade him from removing them. After this, the plaintiff voluntarily quit the premises, leaving the fixtures in the house. Thereupon the said Straub resumed possession of the building, and for the remainder of his term paid rent to Hollis and Vroom. After plaintiff so left the house he instituted this action.

It does not appear that defendant knew the said fixtures had been placed in the house, and he testified that he did not intend by his deed to convey anything that belonged to Straub or plaintiff. Hollis and Vroom knew when they bought that plaintiff was occupying the house, and defendant informed them when he sold that he had rented the building to Straub for one year.

On this state of the proofs, the court, after refusing instructions, found the issues for the plaintiff. Defendant has appealed to this court.

CHARLES P. HESS, for the appellant.

I. Plaintiff has no cause of action against defendant for conversion. If plaintiff had a right to remove the fixtures as against defendant, he also had a right to remove them as against defendant's grantee. If, on the other hand, the fixtures were a part of the realty and passed by the deed, then plaintiff had no cause of action against defendant, there being no agreement between them. *Koetter v. Smith*, 2 Wallace (U. S.) 491; *Powell v. McAshan*, 28 Mo. 70; Ewell on Fixtures, 80.

II. The ordinary warranty deed from defendant to Hollis and Vroom did not convey plaintiff's trade fixtures to them, plaintiff being in actual possession of the premises as a tenant at the time of conveyance. The threat of Hollis to sue if fixtures were removed was idle and should not have been noticed by plaintiff. *Holmes v. Tremper*, 11 Am. Dec. 238, and note; *Kerr v. Kingsbury*, 33 Am. Rep. 362; *Wall v. Hinds*, 4 Gray (Mass.) 256. A tenant may remove during possession, improvements and trade fixtures made by him, until his term ceases. After his possession ends, such right ends. Ewell on Fixtures, 86 to 96, inclusive.

III. The vendee acquires no greater title than his vendor had. 1 Hilliard on Vendors, 409; *Lacey v. Giboney*, 36 Mo. 320. The fact that tenant had possession of the property described in the deed was sufficient to put vendees on inquiry, and they were bound to ascertain the nature of tenant's rights. Ewell on Fixtures, ch. 9, p. 316; *Winfrey v. Work*, 75 Mo. 56; *Bircher v. Parker*, 42 Mo. 118; *Ib.* 43 Mo. 443.

F. P. WILEY, for the respondent.

I. The fact that Walsh was in possession when Hollis and Vroom purchased, imparted no notice to them, except of the length of his term; not even that "he had or had not paid his rent." *Winfrey v. Work*, 75 Mo. 56.

II. The deed passed the title to the fixtures to Hollis and Vroom between vendor and vendee. Washb. Real Prop. 338; *Curry v. Schmidt*, 54 Mo. 515; *Thomas v. Davis*, 76 Mo. 72, and cases cited.

III "The sale of the improvements by the landlord and the application of the proceeds to his own use was a conversion of them, and entitles the lessee to compensation in damages." *Bircher v. Parker*, 43 Mo. 443; *Koch v. Branch*, 44 Mo. 542; *Williams v. Wall*, 60 Mo. 318.

IV. It is no matter that the plaintiff was in possession in this case, for the defendant here, knowing

plaintiff's rights, directed the purchasers away from him, for the purpose of consummating the sale, and thereby making them innocent purchasers without notice; hence, leaving plaintiff to this remedy, or none.

PHILIPS, P. J.—I.   This is an action of trover, or for conversion.   The plaintiff claims that when the conversion took place, the property belonged to him as fixtures, part of which was placed in the building by the tenant of defendant, from whom he claims to have bought it, and a part of which he placed in the building after he had entered under defendant's lessee.

I understand the law to be, that to maintain the action of trover there must be either a taking from the owner, or an unwarranted assumption of control and ownership over the thing, or an illegal use or abuse of it, or proof of demand and refusal to surrender.   *Kennet v. Robinson*, 2 J. J. Mar. 84.   "There must be a destruction of plaintiff's property, or some unlawful interference with his use, enjoyment, or dominion over it; or an appropriation of it by the defendant to his own use in disregard or defiance of the owner's rights."   *Rand v. Oxford*, 34 Ala. 477.   It consists in a tortious act by the defendant by which he deprives the plaintiff of his goods, either wholly or but for a time.   [2 Chitty Pl. 619 (16 Ed.)

I find none of the essential elements of these definitions in the facts of this case.   The defendant did not touch the property.   He did not interfere with it, nor interrupt the plaintiff's use and enjoyment of it.   His only act, complained of, was to make a deed of conveyance of the real estate and its appurtenances to a third party.   He never made any claim to it, nor notified the plaintiff not to remove it.   The only notice of any adverse assertion of claim was from Hollis and Vroom.   It is most questionable if this could be regarded as the semblance of a conversion.   In *Thorowood v. Robinson* (6 Q. B. 769), it was held that a mere refusal to permit plaintiff's servant to come on defendant's premises to remove goods did

not amount to a conversion. Hollis and Vroom did not interrupt plaintiff's possession. He held and enjoyed the property so long as he remained in the house, and he left without even an attempt to remove it.

In respect of a fixture thus situated and held, I hold, both on authority and principle, that the mere fact of a landlord making a deed to the realty during the tenancy is not of itself sufficient to support the action of trover. To so hold, would be, in my opinion, to revolutionize the whole doctrine of trover as universally recognized for ages, both in England and in America.

This precise question is considered and determined in *Guthrie v. Jones* (108 Mass. 191, 196), in which it was held, that counters so attached to the building as to pass by a deed conveying the realty and appurtenances between vendor and vendee, although as between landlord and tenant, the latter might remove them as his property, yet the mere fact of a conveyance by the landlord to a third party during the tenancy, will not support the action for trover by the tenant against the landlord. This is supported by a multitude of adjudications. *Bliss v. Whitney*, 9 Allen 114; *Hanrahan v. O'Reily*, 102 Mass. ; *Robinson v. Austin*, 2 Gray, 564; *Minshell v. Lloyd*, 2 Mees. & W. 450 ; *Burnside v. Twitchell*, 43 N. H. 390; *McIntosh v. Trosten*, 3 Mees. & W. 184; *Roffey v. Henderson*, 17 Q. B. 573; *Wilde v. Waters*, 16 C. B. 637; *Yose v. Sanders*, 16 Vt. 243; *Carr v. Clough*, 6 Foster, 280 ; 17 Me. 455 ; 39 Me. 406; and is cited by Cooley on Torts, 454.

This question is fully considered in *Davis v. Buffum* (51 Me. 160). The facts in that case are quite like these at bar. It is expressly held that the giving of a deed by the landlord will not support the action for a conversion by the tenant. After citing the case of *Fuller v. Tabor* (39 Me.), in which it is held that the taking a quit-claim of the land and building and putting it to record, would not of itself constitute conversion on the part of the person receiving the deed, the court say: "Neither can the mere giving a deed of land leased, the lessee continu-

ing in possession, be deemed a conversion of fixtures which the tenant has the right to remove during the term. The lease was as valid as before the deed. The rights of the lessee remained the same. The deed was no more a conversion of the tenant's fixtures than it was a breach of the covenants of the lease. The mere taking a mortgage of personal property from one having no title and recording the same, without taking possession of the mortgaged property or interfering with the, same, constitutes no conversion for which trover will lie." *Burnside v. Twitchell*, 43 N. H. 390. "The demand of the plaintiff after he had quitted the possession constituted no conversion."

So Greenleaf's Evidence (vol. 2, section 642), affirms the rule in respect of the evidence of a conversion to be, that if the thing done by the defendant "does not interfere with the owner's dominion of the property, nor alter its condition, it is not" a conversion.

There is another consideration which places this rule upon an immovable rock. No rule of law is more firmly rooted, in respect of such fixtures, than that it is optional with the tenant to regard them as removable. It is at his election, and he must exercise this right of election and removal during the existence of the tenancy, and he cannot do so after the termination of his lease, or his abandonment of the premises, or, in certain qualified instances, unless within a reasonable time thereafter. "Fixtures go at the expiration of the term to the landlord, unless the tenant has during the term exercised the right to remove." *Heap v. Booton*, 12 C. B. 74, E. C. L. 274; *Leader v. Honewood*, 94 E. C. L. 544; *Birch v. Parker*, 40 Mo. 119, 120. Redfield, J., in *Preston v. Briggs* (16 Vt. 124), observed: "All fixtures, for the time being, are part of the freehold, and, if any right to remove them exist in the person erecting them, this must be exercised during the term of the tenant, and if this is not done, the right to remove is lost, and trover cannot be maintained for a refusal to give them up." See Taylor, L. & T., sect. 555. The rule ap-

plies, not only to tenancies which terminate by lapse of time, but also to cases where the tenancy is determined by the tenant's own act, or abandonment. Ewell on — Fix. 144–5. When the defendant made the deed to Hollis and Vroom it does not even appear that he knew anything about these fixtures. If he had known it, how can he be held to anticipate that the tenant would exercise his right of election and removal. Had the plaintiff made no such election, nor attempted a removal, there would have been no conversion. How glaringly absurd, then, is it to talk about a physical act which may be both a conversion and not a conversion. If the defendant converted this property at all, it was at the instant of the making of the deed. If it was then converted the plaintiff, at the instant, had his right of action. Had he sued at once, we would have the solecism of a party suing for a conversion of property and recovering therefor, while at the time he was in the possession; the full and uninterrupted control and enjoyment of its use. Such a thing cannot be. It is a mockery of every rule of law and common sense.

If, on the other hand, the plaintiff continued to hold and enjoy the property while he held as tenant, and left the premises without removing, or attempting to remove the fixtures, as the record shows he did, he is confronted with the other horn of the dilemma of attempting to maintain trover for fixtures after voluntarily quitting the premises. This the law says he cannot do. This plaintiff was not even the tenant of defendant. Between them there was no privity of contract. He never attorned to the defendant. Straub was his landlord. To him he paid the rent, with him he contracted and dealt. The defendant never recognized plaintiff as his tenant, but regarded Straub as his tenant, and collected rent from him as if the plaintiff had not existed. Straub, the defendant's tenant, did not remove this property during his tenancy, and when at the end of his term, this property was left in the building it belonged to the landlord, whoever he then was. The plaintiff left the premises, making no demand on

this defendant for his fixtures; and yet sues for a conversion. There is no warrant in the law for such action.

The case of *Bircher v. Parker* (43 Mo. 443), relied on by plaintiff, is misconceived. It is not parallel in its facts; and if it decides what plaintiff contends for, it ought not to stand, and I am sure would not under review of the supreme court. That was a proceeding by injunction instituted by the landlord against the tenant to restrain him from removing fixtures. The tenant was prevented, by reason of the restraining order, from exercising the right of removal during his term. After the termination of the lease, and during the pendency of the injunction proceedings, the landlord, plaintiff in the injunction suit, conveyed the premises to a stranger, under circumstances which passed the title to the fixture, which was a house. In assessing the defendant's damages on a dissolution of the temporary injunction, the court, through Currier, J., held that the deed of conveyance was admissible in evidence as tending to show a conversion, "and that under the circumstances of this case it is sufficient for that purpose." In view of the fact that the landlord had interposed the injunction to prevent the removal of the fixtures during the term, his manifest purpose in conveying the property while the restraining order was operating, was to defraud the defendant. Under such circumstances the court thought the deed should be admitted as evidence of a conversion in assessing defendant's damages.

This, too, was so held, as it was "to be inferred that the plaintiff (the landlord) was in possession of the premises," (when he conveyed), and the tenant was out of possession, whereby no notice was imparted to Jones, the purchaser of the tenant's rights.

That case went to extremest length in admitting the deed, even when supplemented by other persuasive facts. It is not to be extended to a case situated as this is. It is unnecessary to discuss the question whether Hollis and Vroom took with notice of plaintiff's rights, growing out of their knowledge that plaintiff was in possession, etc.

They are not before this court. Under the undisputed facts of this case, this action is not sustained, and the demurrer to the evidence should have been allowed.

The judgment of the common pleas court is, therefore, reversed. All concur.